J-S25045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| B.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.D. | : | No. 1902 WDA 2015 |

Appeal from the Decree November 6, 2015 in the Court
of Common Pleas of Allegheny County Civil Division at
No(s):  No. FD 09-008969-005

BEFORE:  FORD ELLIOTT, P.J.E., MUNDY, JENKINS, JJ.

MEMORANDUM BY JENKINS, J.:                    FILED: July 14, 2016

Appellant, B.D. ("Mother"), appeals from the order entered October 6, 2015, which modified the parties' March 1, 2010, amended custody order. We affirm.

Mother and C.D. ("Father") separated in 2009 and divorced in August of 2010.  Mother and Father have one child together, C.D. (born in March of 2008) ("Child").  On October 18, 2009, Father filed a petition for custody of Child.  On March 1, 2010, the trial court awarded Mother primary custody of Child, and awarded Father partial custody.  The order directed Father to supervise any contact that D.D., Child's paternal grandfather ("Paternal Grandfather"), had with Child until Child reached the age of seven.

On May 16, 2013, the custody order was modified providing that Child would have no contact with Paternal Grandfather, pending an evaluation of Paternal Grandfather by Robert Coufal, Ph.D.,[1] because of allegations by Mother that Paternal Grandfather had engaged in improper behavior with Child. The alleged improper behavior consisted of Paternal Grandfather allegedly showing Child naked adults on his cell phone, and allegedly exposing himself to Child while they were swimming in a lake. On December 10, 2013, the trial court permitted Paternal Grandfather to have contact with Child as long as their visits were supervised by Father and a court-specified family member.

On September 19, 2014, Father filed a petition for modification of the custody order and requested shared physical and shared legal custody of Child. On April 14, 2015, the trial court dismissed Father's petition for modification. On April 21, 2015, the trial court vacated the order of April 14, 2015 because it was entered in error. On May 18, 2015, Father amended his petition for modification to request primary custody of Child. On June 16, 2015, Mother filed an answer to Father's petition. On October 14, 2015 and October 15, 2015, hearings were held on Father's amended petition. During the hearings, A.H., Father's former sister-in-law; J.

_____

[1] Dr. Coufal evaluated Paternal Grandfather and determined Paternal Grandfather did not have a sexual interest in children.

Anthony McGroarty, Ph.D.; J.W., Mother's boyfriend; D.D., Child's Maternal Grandmother; B.B, Father's uncle; C.S., Mother's brother; C.S., a school resource officer; S.S., Mother's sister-in-law; Mother; and Father testified.

By order entered November 5, 2015, the trial court continued the parties' shared legal custody of Child. In addition, the trial court awarded Mother and Father shared physical custody of Child as follows:

a. Father shall have physical custody every other weekend from Friday at 5:15 p.m. through Sunday at 6:15 p.m.

b. Father shall have physical custody every Tuesday evening from 5:15 p.m. through 8:15 p.m.

c. Father shall have physical custody every other week from Thursday after school until 8:15 p.m. Said custody shall be exercised on the weeks Father does not exercise custody from Friday at 5:15 p.m. through Sunday at 6:15 p.m.

d. Mother shall exercise physical custody at all times not otherwise specified above.

e. Either party may exercise additional or alternative custody periods as the parties mutually agree.

Trial Court Order, 11/5/15, at 1-2 (unpaginated). During the summer, the trial court directed that the parties "share custody on a week on/week off basis." *Id.*

On December 4, 2015, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b). The trial court filed a Rule 1925(a) opinion on November 25, 2015.

On appeal, Mother presents the following issues for our review:

1. Whether the trial court committed an abuse of discretion and/or error of law when it denied [Appellant] a [t]ransfer of [v]enue to a courthouse where [Appellee] is not an Allegheny County Family Court Sheriff's Deputy[?]  In the [trial c]ourt's May 28, 2015 [o]rder, it was cited, "To seek a change in venue now certainly appears to be due to dissatisfaction with the result and hope that another forum would produce a different result [], prior to the trial even beginning[?]

2. Whether the trial court committed an[ ] abuse [of] its discretion/error of law when it honored [Appellee]'s request and denied [Appellant] discovery[?]

3. Whether the trial court committed an abuse of discretion/or error of law when it established a shared arrangement during the summer months is appropriate, where overwhelming witness testimony, [c]hild forensic interviews and testimony divulged significant safety concerns in modifying Child's custody and granting unsupervised time with paternal grandparents[?]

Mother's brief at 6.[2]

Our scope and standard of review in custody matters is as follows.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion.  We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to

_____

[2] Mother did not present her first and second claims in her Rule 1925(b) statement of errors on appeal.  Therefore, we find that Mother waived these issues on appeal.  *See Krebs v. United Refining Company of Pennsylvania,* 893 A.2d 776, 797 (Pa.Super.2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved in his or her brief on appeal).

the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super.2012) (citation omitted).

Further, we have stated the following.

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super.2006), *quoting Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.Super.2004)).

With any custody case under the Custody Act, 23 Pa.C.S. §§ 5321-5340, the paramount concern is the best interests of the child. In applying the Custody Act, the trial court determines a child's best interests through consideration of all of the following sixteen factors:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

- 5 -

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one

another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.

This Court has stated that, "[a]ll of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.,** 33 A.3d 647, 652 (Pa.Super.2011).

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.[] § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.,** 65 A.3d 946, 955 (Pa.Super.2013), appeal denied, 70 A.3d 808 (Pa.2013).

**A.V., supra** at 822-823. Instantly, the trial court set forth a detailed and comprehensive analysis of each custody factor in Section 5328(a) in its November 6, 2015 opinion accompanying the subject order, which we have carefully reviewed in light of Mother's issues on appeal. **See** Trial Court Findings and Conclusions, 11/5/15, at 1-4 (unpaginated).

On appeal, Mother argues that the trial court committed an abuse of discretion when it established a shared arrangement during the summer

months in the face of what she characterized as overwhelming witness testimony and child forensic interviews that revealed significant safety concerns to Child. Mother's brief at 6.

With regard to Mother's allegations that Paternal Grandfather showed Child naked adults on his cell phone and exposed himself to Child while they were swimming in a lake, Dr. McGroarty testified that he relied on Dr. Coufal's evaluation of Paternal Grandfather, which concluded that Paternal Grandfather did not have a sexual interest in children. N.T., 10/15/15, at 31. Dr. McGroarty further testified that he recommended Paternal Grandfather was safe to be interacting with Child, and that Child appears to be comfortable with his relationship with Paternal Grandfather. *Id.* at 32. Dr. McGroarty testified that Child has a "good relationship with both of his parents," Father's girlfriend, and Child was "not at risk when he was in custody of [F]ather." *Id.* at 32.

The trial court found that "it became clear to me that the Child was constantly being reminded of this incident by [the] maternal side of the family," and the "paternal side of the family was pressing the Child to recant." Trial Court opinion, 1/11/16, at 6-7. The trial court concluded, "Child has been placed in an extremely difficult situation by both sides of his family and he is feeling the psychological effects." *Id.* Moreover, the trial court found that "[d]rastically restricting [C]hild's contact with either side of the family will only make matters worse." *Id.*

Furthermore, the trial court found:

> Child is entitled to spend significant time with both parents. Although there is a significant distance between the parents' homes, during the summer months, when the exigencies of travel to and from school are absent, there is no reason why Child should not spend equal amounts of time with both parents. This finding is also supported by the psychological evaluation of Dr. McGroarty, who opined: "Based upon the results of this evaluation, it is my opinion that [Child] is being well-cared for when he is in the custody of both parents and that his time with both parents is valuable [to] his development. I do not believe that his time with his father needs to be limited as it [sic] [Mother] is suggesting."

Trial Court Opinion, 1/11/16, at 4 (citations omitted).

Upon careful review, we find that the totality of the record evidence supports the trial court's conclusions. In so holding, we give deference to the trial court on its determinations regarding credibility and weight of the evidence with respect to finding that a shared arrangement during the summer months is appropriate. *See C.R.F, supra* at 443. We find no error of law, and the trial court's conclusions are not unreasonable in light of the record. Accordingly, we affirm the trial court order.

Order affirmed.[3]

_____

[3] Appellant's Motion for Modification of the Statement of Errors Complained of on Appeal is denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/14/2016

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

B.D.,

            Plaintiff

   vs.

C.D.,

            Defendant

No. FD 09-008969-005

Superior Court No. 1902 WDA 2015
**CHILDREN'S FAST TRACK APPEAL**
**OPINION**
**JUDGE K. R. MULLIGAN**

Copies by first class mail to:

Plaintiff:

101 Eastern Avenue
Moon Twp., PA 15108

Counsel for Defendant:

Michael DeRiso, Esquire
Mackenzie Grills, Esquire
Law & Finance Building
429 Fourth Avenue, Suite 1801
Pittsburgh, PA 15219

FILED

16 JAN 11 PM 2: 25

-1-

(99)

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

B.D.,

Plaintiff

No. FD 09-008969-005

vs.

Superior Court No. 1902 WDA 2015

**CHILDREN'S FAST TRACK APPEAL**

C.D.,

Defendant

## OPINION

K. R. Mulligan, J.

B.D. (hereinafter, Mother) and C.D. (hereinafter, Father) are the natural parents of one minor child (hereinafter, the Child), (DOB 03/11/2008). Mother and Father separated in 2009.

In October of 2009, Father filed for custody, and the parties have been in various forms of custody litigation throughout the Child's life. The most contentious issue in the litigation involves allegations that the Child's Paternal Grandfather behaved inappropriately with the Child on two occasions in the past: first, by allegedly showing the Child pictures of naked adults on his cell phone, and second, by allegedly exposing himself to the Child while the two were swimming in a lake. These allegations have been consistently and vigorously denied by Paternal Grandfather.

Father's initial custody action was resolved by a Consent Order entered on March 1, 2010, in which Mother was awarded primary custody, with Father having partial

-2-

physical custody; Father was to supervise any contact that Paternal Grandfather had with the Child until he reached the age of 7. The March 1, 2010 Consent Order was modified on May 16, 2013 to provide that the Child have no contact with Paternal Grandfather pending an evaluation by Dr. Robert Coufal and further order of court; on December 10, 2013, Paternal Grandfather was permitted contact with the Child if he were supervised by Father and a court-specified family member or another person as agreed to by the parties in writing.

Custody evaluations were performed by Dr. J. Anthony McGroarty, and were completed on March 5, 2015. The Court heard Mother's petition for a change of venue on May 28, 2015, which was denied by Order dated July 7, 2015.[1] Father's motion to amend his Custody Petition to Primary Custody was granted on July 7, 2015, and a two-day trial thereon was conducted on October 14-15, 2015.

On November 5, 2015, following a two-day custody trial, I made extensive findings and conclusions which reviewed factors in the custody statute. I ordered that legal custody of the minor child should be shared between Mother and Father; that Mother should retain primary physical custody during the school year, but that the parents should equally share physical custody during the summer months; that there would be no court ordered restriction of the Child's contact with his paternal grandfather; and that the Child should be enrolled in therapy and that the parents shall alternate in taking him to appointments. (See Findings, Conclusions and Order of Court dated November 5, 2015, attached hereto). Mother appeals my November 5, 2015 Order of Court.

---

[1] Mother did not raise any issue with this interlocutory order in her concise statement.

-3-

The underlying Order of Court and the record upon which it stands speak largely for themselves. Mother's specific complaints are as follows, each of which I shall address briefly in turn:[2]

1. **That the evidence does not demonstrate that "a shared arrangement during the summer months is appropriate."** *See* **Mother's Statement of Errors Complained of on Appeal, at paragraph 1.**

I found that the Child is entitled to spend significant time with both parents. Although there is a significant distance between the parents' homes, during the summer months, when the exigencies of travel to and from school are absent, there is no reason why the Child should not spend equal amounts of time with both parents. This finding is also supported by the psychological evaluation of Dr. McGroarty, who opined: "Based upon the results of this evaluation, it is my opinion that [the Child] is being well-cared for when he is in the custody of both parents and that his time with both parents is valuable [to] his development. I do not believe that his time with his father needs to be limited as it [sic] [Mother] is suggesting." (Dr. McGroarty's Report, Exhibit 9, p. 20).

2. **That the evidence does not demonstrate that Appellee is "slightly better able to encourage and permit contact between the child and mother."** *See* **Mother's Statement of Errors Complained of on Appeal, at paragraph 2.**

As set forth in my findings and conclusions, this was based on the fact that Father acknowledges that Mother has been a good Mother to the child. Notwithstanding this finding, I did note that the animosity which each party has for the other makes it difficult for him/her to encourage contact.

---

[2] Throughout her concise statement, Mother complains of my findings that various matters were established by clear and convincing evidence. While I understand that Mother is a pro se litigant who may not be aware that "clear and convincing evidence" is a legal term of art, I must note that such language does not reflect the appropriate evidentiary standard for my findings of fact.

-4-

3. **That the evidence does not support court's conclusion that alleged abuse was "in the past." *See* Mother's Statement of Errors Complained of on Appeal, at paragraph 3.**

There were no allegations of any recent physical abuse. In fact, one of the problems in this case appears to be Mother's dwelling on past abuse and communicating this to the Child. I thoroughly analyzed this issue in paragraph 2 of my findings and conclusions. With respect to Mother's and the child's allegations of anger outbursts, I noted in paragraph 13 that Father and his family may express their emotions in temper outbursts to which Mother is not accustomed. One of the reasons counseling was ordered for the Child was to help him deal with these issues.

4. **That the Court disregarded "clear and convincing evidence in Child's forensic interviews" regarding Father and paternal grandparents. *See* Mother's Statement of Errors Complained of on Appeal, at paragraph 4.**

Contrary to Mother's assertions, the evidence from the forensic interviews conducted in this case supports my conclusions. As noted in paragraph 2 of my findings and conclusions, one of my concerns was that during the third evaluation, the Child discussed Father's punching a headboard and acknowledged that he learned of this through the maternal side of the family. I also noted Mother's fears as well as the Child's fears (which I believe have been exacerbated by Mother). I also noted in paragraph 5 of my findings that the allegations concerning paternal grandfather are being repeated by the adults in Mother's family and that this has become the child's reality.

5. **That the evidence did not demonstrate Appellee's willingness to protect Child from continued risk of harm or that unsupervised time with paternal grandfather was in the Child's best interest. *See* Mother's Statement of Errors Complained of on Appeal, at paragraph 5.**

I did not make a finding that unsupervised time with paternal grandfather was in the Child's best interest. On the contrary, I cautioned Father and the paternal side of the family that unsupervised exposure to paternal grandfather may frighten the Child and that

continuous questioning about the allegations is not appropriate. The Child will need to work through these issues in therapy. What I did *not* do (based on the insufficient evidence to substantiate the allegations) was place conditions on the Child's custody time with his Father. *See Fatemi v. Fatemi*, 489 A.2d 798 (Pa.Super. 1985) (party moving for restriction on partial custody must show that restriction is necessary to avoid detrimental impact on the child and that content of the restriction manifests a reasonable relationship between the restriction and avoidance of detrimental impact).

**6. That the evidence did not support Court's conclusions regarding increasingly definitive allegations of the Child. *See* Mother's Statement of Errors Complained of on Appeal, at paragraph 6.**

During the first forensic evaluation (Information to Accompany Forensic Interview DVD, Exhibit F2, p. 2), it was reported that the Child made no disclosure. During the second forensic evaluation, when the interviewer asked the Child why he was there, he responded, "Because Pap-Pap [_____] showed me naked pictures. DONE." When asked to explain everything about this incident, the Child began talking about Pap-Pap pulling his pants down in the lake. The Child said that this incident and the naked picture incident both took place when his Father was "peeing behind a tree." The Child repeatedly said "that's all" after every question. During the third forensic interview, the Child described what they were eating, what he was doing and listed numerous relatives who were present when this incident took place.

It became clear to me that the Child was constantly being reminded of this incident (or these two incidents) by the maternal side of the family. It also was clear that the paternal side of the family was pressuring the Child to recant. My conclusion was that the Child needed to be enrolled in therapy to work through these issues.

-6-

In summary, this child has been placed in an extremely difficult situation by both sides of his family and he is feeling the psychological effects. Drastically restricting the Child's contact with either side of the family will only make matters worse. The Child needs to work through these issues with a therapist.

For the foregoing reasons, the November 5, 2015 Order of Court should be affirmed.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

C██████ D█████████,

    Plaintiff

    vs.

B████ D████████,

    Defendant

FAMILY DIVISION

No. FD09-8969-005

FINDINGS, CONCLUSIONS
and ORDER OF COURT
JUDGE K. R. MULLIGAN

FILED
2015 NOV -6 PM 1:50

Copies by first class mail to:

Counsel for Plaintiff
Erica Burns, Esq.
4800 Liberty Avenue
Pittsburgh, PA 15224

Counsel for Defendant
Michael DeRiso, Esq.
Law & Finance Bldg.
429 Fourth Avenue
Suite 1801
Pittsburgh, PA 15219

Hand Delivery to:
Victor Johnson

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYVLANIA

| | | |
|---|---|---|
| C▬▬ D▬▬, | ) | FAMILY DIVISION |
| | ) | |
| Plaintiff | ) | No. FD09-008969-005 |
| | ) | |
| vs. | ) | |
| | ) | |
| B▬ D▬, | ) | |
| | ) | |
| Defendant | ) | |

## FINDINGS AND CONCLUSIONS

AND NOW, this 5ᵗʰ day of November, 2015, after trial, the court hereby reviews the factors set forth in 23 Pa. C.S.A. §5328 as follows:

1. Both parties say that they wish to encourage and permit frequent and continuing contact between C▬ and the other parent. However, each party has such animosity toward the other that it is difficult for him/her to encourage contact. Additionally, the issue of paternal grandfather has become so prevalent in this custody case that it has become a matter of principle for each party. Notwithstanding the above findings, the court finds that as between father and mother, father appears slightly better able to encourage and permit contact between the child and mother. Father apparently does acknowledge that mother has been a good mother to the child.

2. Mother alleges that father was abusive in the past. While this may well be accurate (the psychologist said that father admitted to it), this again has become an issue in which C▬ has become involved. The court certainly recognizes that any violent, abusive behavior by Father was improper (and may well have provided the basis for Mother's

actions), it is important for Mother to move beyond her sense of herself as a victim and it is even more important for her not to make C███ feel like a victim. The court was very concerned that C███ told the forensic evaluator that father had punched the headboard when his mother was sleeping and acknowledged that he only learned of this through the maternal side of the family. The court does not find that C███ will be subjected to physical abuse in Father's custody. However, the court recognizes that both mother and C███ have a significant fear of abuse at the hands of father and his family. The court finds that both parties are capable of providing adequate physical safeguards and supervision of the child.

2.1 There have been numerous investigations by Child Protective Services in this case, none of which has resulted in any long term involvement or indicated childline.

3. Mother has performed the majority of the parental duties on behalf of C███ up to this point. However there is no indication that father is not capable of performing these parental duties.

4. C███ has begun school in the Moon School District and appears to be doing well there. Given the amount of the conflict around the child in each of the families, it is important that his school district remain consistent. In addition, mother and C███ would believe that the school district where father resides would favor father.

5. Unfortunately, the extended family in this case has become an issue. Mother and C███ are convinced that paternal grandfather exposed himself to the child and exposed the child to inappropriate photos. Other than the child's statements, there is no corroborating evidence of this. Additionally, it appears that the child's statements about this incident which took place when he was very young have become more and more definite throughout the years. This would seem to demonstrate that the alleged actions of paternal

grandfather are being repeated by the adults in mother's family and that this has become the child's reality. What father does not understand is that his challenging this is making the child feel like a liar and the court does not find that the child is a liar. The court finds that the reported incident with paternal grandfather has become C███'s reality. Because there is insufficient evidence to substantiate the allegations with respect to paternal grandfather, the court will not order that the child not have contact with paternal grandfather. However, father and the paternal side of the family are cautioned that unsupervised exposure to paternal grandfather may frighten the child and continuous questioning about his allegations is not appropriate. The child will need to work through these issues in therapy. With respect to the remaining paternal family members, other than their efforts to convince the child that paternal grandfather is "innocent", they provide a benefit to C███. Similarly, with respect to the maternal family members, other than the focus about the alleged incident with paternal grandfather, they appear to be a beneficial relationship.

6. There are no sibling relationships in this case. Mother's current significant other does have a child and it is likely beneficial to C███ to have contact with other children.

7. The child expressed a strong preference in favor of mother and against father. However, this appeared to be based primarily on the child's perception that he is being pressured by father to "lie" about paternal grandfather. If this is true, it undoubtedly places significant pressure on C███. This is particularly true because C███ truly believes that the incidents to which he refers took place. Further, it is very clear the child is very attached to mother and wants to please her and to do what she wants. While considering the child's

testimony as evidence of his feelings and pressure that he is under, the court will not place a great deal of weight on his expressed preference.

8. Mother would argue that she has not attempted to turn C▮▮ against father but is simply insuring that reasonable safety measures are necessary to protect him from harm caused by paternal grandfather. However, mother appears to be very willing to misinterpret and believe the worst about any aspect of father's family and about anything that has to do with father and no doubt this has been communicated to C▮▮.

9. With respect to Factor 9, both parties are likely to maintain a loving, stable, consistent and nurturing relationship with the child. As stated *infra* C▮▮ is significantly bonded to mother.

10. Mother has primarily provided for the daily physical, emotional, developmental, educational and special needs of the child to date although there is no reason to find that father could not do so as well.

11. The significant distance between the residences of the parties is a concern. Father is seeking primary or shared custody and requesting that C▮▮ be enrolled in his school district. As stated above, the consistency of the school district is likely an important factor for this child. Therefore, a shared arrangement during the school year is not feasible. However, a shared arrangement during the summer is appropriate.

12. Mother has demonstrated her availability to care for the child or make appropriate child care arrangements. Father testified that he was able to do so but his testimony was vague and it was not clear what specific arrangements he would make.

13. The level of conflict between the parties and willingness to cooperate is a significant problem in this case. Again, mother would state that this is because of her efforts

to protect the child from abuse but the court finds that mother has in many ways exacerbated the conflict. It appears clear that father and his family may express their emotions in temper outbursts and this may be something that mother is not accustomed to. As confirmed by the psychological testing, mother's inability to see any fault with respect to herself does not help to alleviate conflict because she will take no responsibility for the situation. It is clear that C███ is being brought into this conflict by both parties. At this point in time, he feels that father is challenging his veracity and this is detrimental to the child's relationship with father. The videotaping of the custody exchanges by the paternal side of the family has exacerbated not reduced conflict and involved the child in the distrust between the families.

14. There's no evidence of drug or alcohol abuse.

15. There's no evidence of any mental or physical condition of either party or party's household.

16. With respect to Mother's contempt petition, although Father's refusal to allow C███ to call Mother any time he wants constitutes a technical violation of the order, the court finds that given the conflictual relationships in this case, this language should be eliminated. No sanctions will be imposed at this time. However, this finding should be noted in the event of a violation in the future.